Attachment A

# FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "Agreement"), dated as of June 1, 2008, is by and between 5860 CHICAGO RIDGE, LLC, an Illinois limited liability company (the "Borrower") and PROTECTIVE LIFE INSURANCE COMPANY, a Tennessee corporation (the "Lender"). Unless otherwise specifically defined herein, all capitalized terms used in this Agreement shall have the meanings attributed to them in the Mortgage (as hereinafter defined).

## RECITALS:

A. The Borrower executed that certain Mortgage and Security Agreement dated as of September 16, 2005 (as the same may be amended, restated, supplemented or modified, the "Mortgage") pursuant to which, among other things, the Borrower granted a mortgage in favor of the Lender on the real property described therein and located at 5860 West 111th Street, Chicago Ridge, Cook County, Illinois (the "Property").

B. The Mortgage secures the obligations of the Borrower to the Lender under (i) that certain Promissory Note (as the same may be amended, restated, supplemented or modified, the "Note") dated as of September 16, 2005 in the original principal amount of Three Million Five Hundred Seventy-Five Thousand and No/100 Dollars ($3,575,000.00) (the "Loan") and (ii) the other Loan Documents.

C. The Borrower executed that certain Assignment of Rents and Leases dated as of September 16, 2005, pursuant to which, among other things, the Borrower assigned to the Lender all rights of the Borrower under any lease of the Property.

D. Drew Management, Inc., an Illinois corporation ("Drew Management"), Daniel R. Drew Children's Trust Dated March 25, 1998 ("Drew Trust") and Daniel Drew (collectively with Drew Management and Drew Trust, the "Guarantors" and each a "Guarantor") guaranteed the Secured Debt pursuant to that certain Guaranty dated as of September 16, 2005 (as the same may be amended, restated, supplemented or modified, the "Guaranty").

E. The Borrower entered into Lease No. GS-05B-17003 with the United States of America acting by the General Services Administration (the "GSA") for the Property dated as of July 26, 2002 (as the same may be amended, restated, supplemented or modified, the "Lease").

F. Under the terms of the Lease, the Property was occupied by the Internal Revenue Service.

G. On or about May 18, 2007, the GSA informed the Borrower that it was terminating the Lease for "cause" due to the Borrower's alleged failure to maintain the property in accordance with the terms of the Lease.

H. The Borrower has contested the GSA's right to terminate the Lease and has brought suit against GSA in the Federal Court of Claims.

I. The GSA vacated the Premises effective March 1, 2008.

J. As of the date hereof, the Borrower has not complied with certain covenants in the Mortgage, Loan Documents and, as alleged by the GSA, the Lease and had not paid certain real estate taxes levied by various taxing jurisdictions and, consequently, is in default under the Mortgage and other Loan Documents.

K. The Lender is willing to agree to forbear from exercising certain of their rights and remedies under the Mortgage and the other Loan Documents including, but not limited to, its rights to bring and control the Litigation (defined herein) solely for the period and on the terms and conditions specified herein.

**NOW, THEREFORE**, in consideration of the foregoing, and the respective conditions, agreements, warranties and covenants contained herein, the parties hereto agree as follows:

**Section 1. Affirmation of Recitals/Definitions**. The recitals set forth above are true and correct and are incorporated herein by this reference. This Agreement shall be deemed a "Loan Document" except where the context clearly requires otherwise.

**Section 2. Representations and Warranties**. The Borrower represents and warrants to the Lender as follows:

**(a)** The Mortgage, and each of the other Loan Documents remain in full force and effect, and each constitutes the valid and legally binding obligation of the Borrower, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting the rights and remedies of creditors and secured parties, and general principles of equity regardless of whether applied in a proceeding in equity or at law.

**(b)** Except for the Existing Defaults described in Section 3 below, all of the Borrower's representations and warranties contained in the Mortgage and the other Loan Documents are true and correct in all material respects on and as of the date of the Borrower's signing of this Agreement.

**(c)** This Agreement has been duly authorized, executed and delivered to the Lender by the Borrower, is enforceable against the Borrower in accordance with its terms and is in full force and effect.

**(d)** The execution, delivery and performance of this Agreement by the Borrower will not violate any requirement of law, any judgment or any contractual obligation of the Borrower and will not result in, or require, the creation or imposition of any lien on any of the Borrower's properties or revenues.

(e) No consent, approval, authorization or order of any court, governmental authority or other person is required in connection with the Borrower's execution, delivery or performance of this Agreement.

(f) The Borrower: (i) is represented by independent legal counsel of the Borrower's choice in the transactions contemplated by this Agreement; (ii) is fully aware and clearly understands all of the terms contained in this Agreement; (iii) has voluntarily, with full knowledge and without coercion or duress of any kind, entered into this Agreement; (iv) is not relying on any representation, either written or oral, express or implied, made by the Lender other than as set forth in this Agreement; (v) on the Borrower's own initiative, has made proposals to the Lender, the terms of which are reflected by this Agreement; and (vi) has received actual and adequate consideration for entering into this Agreement.

**Section 3. Acknowledgement of Default**. The Borrower acknowledges and agrees that (a) (i) the Borrower has not made certain payments on the Secured Debt to Lender as required by Section 4.1 of the Mortgage and as otherwise required by the other Loan Documents and, therefore, an Event of Default under the Mortgage and the other Loan Documents has occurred and is continuing and (ii) the Borrower has not made certain real estate tax payments with respect to real estate taxes levied on the Property as of the date of this Agreement (collectively (i) and (ii), the "Existing Defaults") and (b) as a result of the Existing Defaults, the Lender is entitled to exercise its rights and remedies under the Mortgage and other Loan Documents. The Borrower acknowledges and agrees that the Lender has the right to declare the Secured Debt to be immediately due and payable under the terms of the Mortgage and the other Loan Documents.

**Section 4. Forbearance**. In reliance upon the representations, warranties, covenants and agreements of the Borrower contained in this Agreement, and subject to the terms and conditions of this Agreement, the Lender agrees to forbear from exercising its rights and remedies under the Mortgage and the other Loan Documents or under applicable law in respect of or arising out of the Existing Defaults for the period (the "Forbearance Period") commencing on the date hereof and ending on July 1, 2009. Upon the termination of the Forbearance Period, the agreement of the Lender to forbear as provided in this Agreement automatically and without further action terminate and is of no force and effect, it being expressly agreed that the effect of such termination will be to permit the Lender to exercise immediately all rights and remedies under the Mortgage and other Loan Documents and applicable law.

**Section 5. Agreements of the Borrower and the Lender**. In consideration for the mutual promises set forth in this Section 5 and elsewhere in this Agreement, the Borrower and the Lender agree as follows:

(a) **Secured Debt**. Borrower agrees and acknowledges that as of the date hereof, the outstanding principal balance of the Secured Debt is $3,285,411.61 and the outstanding interest balance of the Secured Debt is $10,631.40.

(b) **Interest Only Payments**. Notwithstanding anything to the contrary in the Mortgage or any other Loan Documents (but subject to the terms of this Agreement), during the period from January 1, 2008 and ending on July 1, 2009 (the "Interest Only Period"), the

Borrower shall not be obligated to make any payments of principal on the Secured Debt. During the Interest Only Period, the Borrower shall make payments of interest on the unpaid principal balance of the Secured Debt to the Lender commencing on the first day of each month during the Interest Only Period. All payments made by Borrower on the Secured Debt during the Interest Only Period and prior to the date of this Agreement shall be applied toward interest due on the Secured Debt. During the Interest Only Period, interest shall accrue on the unpaid principal balance of the Secured Debt at the rate of five and five-eighths percent (5.625%) per annum, payable in arrears and otherwise in accordance with the terms of the Mortgage and the other Loan Documents; provided that (solely for sake of clarification and not limitation) if a default or Event of Default under the Mortgage or the other Loan Documents (including this Agreement) occurs or exists (other than the Existing Defaults), the Borrower shall pay any Premium (as defined by the Note) in accordance with the terms of the Note.

(c) **Other Amounts and Obligations**. The Borrower agrees that it shall comply with all obligations, covenants, conditions and agreements in this Agreement, the Mortgage and the other Loan Documents during the Interest Only Period, including, but not limited to, paying all amounts that the Borrower is required to pay pursuant to Section 4.1 of the Mortgage (except as specifically set forth in Section 5(b) above).

(d) **Sale of Property**. The Borrower agrees that during the Forbearance Period, it will not sale, grant, assign, convey, transfer or otherwise dispose of the Property without the prior written consent of the Lender.

(e) **Lease of Property**. During the Forbearance Period, the Borrower shall have the right to lease the Property to any party reasonably acceptable to the Lender and on terms reasonably acceptable to the Lender provided that all rents, royalties, issues, profits, income and other benefits arising under any such lease shall be paid over to the Lender to satisfy the Secured Obligations in accordance with the term of the Mortgage and the other Loan Documents.

(f) **Litigation**. During the Forbearance Period, the Lender agrees that it shall not:

(i) Intervene in that certain litigation entitled 5860 Chicago Ridge LLC v. United States, Case No. 07-680, currently pending in the United States Court of Federal Claims Litigation; or

(ii) Intervene in any litigation between any Guarantor and any person or entity involved in the design, construction or repair of any building on the Property (Architect/Design Litigation). The Borrower agrees that Lender is entitled to all proceeds received from the Litigation and the Architect and Design Litigation, until the Secured Debt has been paid in full, after the payment of reasonable attorneys' fees and costs. Neither matter may be settled, released, or dismissed without the written consent of Lender which shall not be unreasonably withheld.

(g) **Real Estate Taxes**. Borrower shall use best efforts to resolve, in a manner acceptable to Lender, all disputes with those taxing authorities with which there are disputes as to the payment of real estate taxes unpaid on the Property resulting in Existing Defaults as of the date of this Agreement. Borrower shall send to Lender upon receipt copies of all notices,

correspondence, documents or agreements received from such taxing authorities and shall copy Lender on Borrower's responses thereto.

**Section 6.** **No Other Waivers; Reservation of Rights**. The Lender has not waived, is not by this Agreement waiving, or has any intention of waiving, any default or Event of Default that may be continuing on the date hereof or any default or Event of Default that may occur after the date hereof (whether the same or similar to the Existing Defaults or otherwise), and the Lender has not agreed to forbear with respect to any of its rights or remedies concerning any default or Event of Default (other than, during the Forbearance Period, the Existing Defaults to the extent, and on the conditions, expressly set forth herein) occurring at any time. Subject to Section 3 above (solely with respect to the Existing Defaults), the Lender reserves the right, in its discretion, to exercise any or all of its rights and remedies under the Mortgage or any other Loan Document as a result of any other default or Event of Default occurring at any time. The Lender has not waived any of such rights or remedies, and nothing in this Agreement, and no delay on the Lender's part in exercising any such rights or remedies, may be construed as a waiver of any such rights or remedies.

**Section 7.** **Additional Events of Default**. The parties hereto acknowledge, confirm and agree that any misrepresentation by the Borrower under, or any failure of the Borrower to comply with the covenants, conditions and agreements contained in, this Agreement or any of the Loan Documents shall constitute a default under this Agreement and a default or Event of Default under the Loan Documents (subject to the agreement to forbear with respect only to the Existing Defaults as set forth in Section 3 hereof).

**Section 8.** **Release**. The Borrowers hereby acknowledge that, as of the date hereof, there are no offsets, counterclaims or defenses of any nature whatsoever, known or unknown, related to the Obligations, the Loan Documents or the obligations of the Borrower thereunder. Nevertheless, if and to the extent that the Borrower is deemed to have any such offsets, counterclaims, or defenses, the Borrower, for itself and for each of its past, present and future officers, directors, shareholders, agents, attorneys, representatives, beneficiaries, heirs, executors, administrators, successors and assigns, as applicable (collectively, the "Releasors"), for and in consideration of the execution and delivery of this Agreement, the covenants, conditions and agreements set forth herein, and for other good and valuable consideration received by the Borrower, the receipt and sufficiency of which are hereby acknowledged, hereby releases, remises, and forever discharges the Lender and any and all of their divisions, subsidiaries, parents, affiliates and other related entities (whether or not such entities are wholly-owned) and each of its past, present and future directors, trustees, fiduciaries, administrators, officers, agents, employees, servants, shareholders, attorneys and insurers (as well as the predecessors, successors and assigns of each of them) (collectively, the "Releasees") of and from all manner of actions, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, liability, rights of offset, executions, claims, counterclaims and demands, whatsoever, in law or in equity, known or unknown, liquidated or unliquidated, suspected or unsuspected, foreseen or unforeseen, which the Releasors, or any of them, now have, ever had, or hereafter can, shall or may have, or may hereafter assert against one or more of the Releasees for or by reason of:

**(a)** any controversy, matter, claim, damage or cause of action whatsoever (including, without in any way limiting the generality of the foregoing, all direct and indirect claims either for direct, consequential, or punitive damages of any kind) arising or accruing on or before the date hereof, whether known or unknown, liquidated or unliquidated, suspected or unsuspected, foreseen or unforeseen at the present time; or

**(b)** any acts, omissions to act or events occurring at any time or times on or before the date hereof which result or may result in present or future claims of any kind (including, without in any way limiting the generality of the foregoing, all direct and indirect claims either for direct, consequential, or punitive damages of any kind)

arising out of, incurred in connection with or in any way relating to any of the Mortgage, the Loan Documents, the Secured Debt or the property encumbered by the Mortgage or the other Loan Documents (collectively, the "Released Claims") and hereby waives any and all defenses that it may otherwise be entitled to raise against the Lender with respect to any of the Released Claims. The Borrower further expressly warrants and represents, that none of the Releasors has sold, granted, transferred or assigned or caused to be sold, granted, transferred or assigned to any other person, firm, corporation or other entity any portion of the Released Claims nor any portion of any recovery or settlement to which they may be entitled. In addition, the Borrower hereby expressly covenants and agrees, that none of the Releasors shall bring, or assist in bringing, any claim, action, cause of action, or proceeding regarding or in any way related to any of the Released Claims, and the Borrower further agrees that the release set forth in this Section 8 is, will constitute, and may be pleaded as, a bar to any such claim, action, cause of action or proceeding. The Borrower further agrees that the release set forth in this Section 8 shall not be set aside for any unilateral or mutual mistake either in law or fact, and, further, the Borrower acknowledges that no promises or inducements whatsoever, other than the consideration recited herein, will be or have been made to the Borrower to induce the Borrower to agree to release the Releasees as set forth in this Section 8.

**Section 9. Miscellaneous.**

**(a) Effect of Agreement.** Except as expressly modified pursuant hereto, no other changes or modifications to the Loan Documents are intended or implied and in all other respects the Loan Documents, as modified hereby, are hereby ratified and confirmed by all parties hereto as of the date hereof. To the extent of conflict between the terms of this Agreement and of any of the Loan Documents, the terms of this Agreement shall govern and control.

**(b) Costs and Expenses.** The Borrower absolutely and unconditionally agrees to pay to the Lender, on demand at any time, all reasonable fees and disbursement of any counsel to the Lender in connection with the preparation, negotiation, execution, or delivery of this Agreement and any agreements contemplated hereby and (b) reasonable expenses which shall at any time be incurred or sustained by the Lender or any of its directors, officers, employees or agents as a consequence of or in any way in connection with the preparation, negotiation, execution, or delivery of this Agreement and any agreements contemplated hereby.

(c) **Further Assurances.** At the Borrower's expense, the parties hereto shall execute and deliver such additional documents and take such further action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement.

(d) **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns.

(e) **Survival of Representations and Warranties.** All representations and warranties made in this Agreement or any other document furnished in connection with this Agreement shall survive the execution and delivery of this Agreement and the other documents, and no investigation by the Lender shall affect the representations and warranties or the right of the Lender to rely upon them.

(f) **Severability.** Any provision of this Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement.

(g) **Reviewed by Attorneys**. The parties hereto acknowledge and agree that neither this Agreement nor the other documents executed pursuant hereto shall be construed more favorably in favor of one than the other based upon which party drafted the same, it being acknowledged that all parties hereto contributed substantially to the negotiation and preparation of this Agreement and the other documents executed pursuant hereto or in connection herewith.

(h) **CHOICE OF LAW.** THIS AGREEMENT (OTHER THAN THOSE CONTAINING A CONTRARY EXPRESS CHOICE OF LAW PROVISION) SHALL BE CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (INCLUDING, WITHOUT LIMITATION, 735 ILCS SECTION 105/5-1 ET SEQ, BUT OTHERWISE WITHOUT REGARD TO THE CONFLICT OF LAWS PROVISIONS) OF THE STATE OF ILLINOIS.

(i) **CONSENT TO JURISDICTION.** THE BORROWER HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY UNITED STATES FEDERAL OR ILLINOIS STATE COURT SITTING IN CHICAGO, ILLINOIS IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE BORROWER HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN ANY SUCH COURT AND IRREVOCABLY WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN SUCH A COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM. NOTHING HEREIN SHALL LIMIT THE RIGHT OF THE LENDER TO BRING PROCEEDINGS AGAINST THE BORROWER IN THE COURTS OF ANY OTHER JURISDICTION. ANY JUDICIAL PROCEEDING, INCLUDING, WITHOUT LIMITATION, ANY COUNTERCLAIMS, BY THE BORROWER AGAINST THE LENDER OR ANY AFFILIATE OF THE LENDER INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT SHALL BE BROUGHT ONLY IN A COURT IN CHICAGO, ILLINOIS.

**(j) WAIVER OF JURY TRIAL.** THE BORROWER AND THE LENDER HEREBY WAIVE TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT.

**(k) Counterparts.** This Agreement may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement.

**IN WITNESS WHEREOF**, this Agreement is executed and delivered as of the day and year first above written.

5860 CHICAGO RIDGE, LLC, an Illinois limited liability company

By: [signature]
Name: DANIEL DREW
Title: MANAGING MEMBER

PROTECTIVE LIFE INSURANCE COMPANY, an Tennessee corporation

By: ______________________________
Name:
Title:

**IN WITNESS WHEREOF**, this Agreement is executed and delivered as of the day and year first above written.

5860 CHICAGO RIDGE, LLC, an Illinois limited liability company

By: ______________________
Name:
Title:

PROTECTIVE LIFE INSURANCE COMPANY, an Tennessee corporation

By: [signature]
Name: Charles Windham
Title: Vice President - Investments