# 5860 Chicago Ridge
# vs.
# The United States

## Deposition of Malinda Pennington

**Taken on: April 29, 2008**

Marlo Reporting & Video Services, Inc.
Phone: (312) 578-0041
Fax: (312) 578-0045
Email: marloreporting@ameritech.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| 5860 CHICAGO RIDGE, LLC | ) | |
| 2428 WEST BLOOMINGDALE | ) | |
| CHICAGO, ILLINOIS 60647 | ) | |
| Plaintiff, | ) | |
| -vs - | ) | Case No. 07-680C |
| THE UNITED STATES | ) | Judge Allegra |
| Defendant. | ) | |

The deposition of MALINDA PENNINGTON, called for examination pursuant to notice and the Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Allison D. Weber, CSR, a notary public within and for the County of Cook and State of Illinois, at 33 West Monroe Street, Suite 2700, Chicago, Illinois, on the 29th day of April, 2008, at the hour of 9:03 o'clock a.m.

Reported by: Allison D. Weber, CSR

License No.: 084-002238

APPEARANCES:

MC MANUS, SCHOR, ASMAR & DARDEN, LLP
BY: MS. SUSAN L. SCHOR and
MS. JEANNE A. ANDERSON
1155 FIFTEENTH STREET, N.W., SUITE 900
WASHINGTON, D.C. 20005
TEL: (202) 296-9260
E-MAIL: sschor@msadlaw.com

Representing the Plaintiff;

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
BY: MR. ROBERT E. CHANDLER
TRIAL ATTORNEY
COMMERCIAL LITIGATION BRANCH
1100 L STREET, NW, ROOM 12002
WASHINGTON, DC 20530
TEL: (202) 307-1011
E-MAIL: robert.chandler@usdoj.gov

Representing the Defendant;

GSA OFFICE OF REGIONAL COUNSEL
BY: MR. JOEL DAVID MALKIN
ASSISTANT REGIONAL COUNSEL
J.C. KLUCZYNSKI FEDERAL BUILDING
230 SOUTH DEARBORN, ROOM 3786
CHICAGO, ILLINOIS 60604
TEL: (312) 353-5424
E-MAIL: Joel.malkin@gsa.gov

Representing the Defendant.

ALSO PRESENT:

DANIEL R. DREW

# I N D E X

| WITNESS | EXAMINATION |
|---|---|
| MALINDA PENNINGTON | |
| By Ms. Schor | 4, 199 |
| By Mr. Chandler | 198 |

# E X H I B I T S

| NUMBER | MARKED FOR ID |
|---|---|
| Pennington Exhibit | |
| No. 1 | 47 |
| No. 2 | 48 |
| No. 3 | 58 |
| No. 4 | 60 |
| No. 5 | 61 |
| No. 6 | 64 |
| No. 7 | 64 |
| No. 8 | 91 |
| No. 9 | 103 |
| No. 10 | 127 |
| No. 11 | 131 |
| No. 12 | 135 |
| No. 13 | 137 |
| No. 14 | 139 |
| No. 15 | 150 |
| No. 16 | 153 |
| No. 17 | 156 |
| No. 18 | 157 |
| No. 19 | 162 |
| No. 20 | 167 |
| No. 21 | 168 |
| No. 22 | 172 |
| No. 23 | 183 |
| No. 24 | 190 |

(Whereupon, Pennington Exhibit No. 10 was withdrawn.)

A. Sometime in 2006.
Q. 2006?
A. Yes.
Q. How about Kelly Juarez?
A. I don't know who that is.
Q. How about Beth Lemanski?
A. I don't know who that is.
Q. Nicholas Thomas?
A. He's a GSA employee.
Q. Do you know where and what?
A. He works here in Chicago.
Q. And what would his responsibility have been or involvement with the building?
A. I would say none. He doesn't work on the Treasury team, he just works in real estate; and he doesn't really have any involvement in this lease.
MS. SCHOR: If you would mark this Pennington 24?
(Whereupon, Pennington Exhibit No. 24 was marked for identification.)
BY MS. SCHOR:
Q. This is US00453, the two first pages are

453 through 456. Have you seen this before?
A. Yes.
Q. And did you see it shortly after September 24th?
A. September --
Q. 2007. It's dated September 24, 2007.
A. Yes.
Q. And when you reviewed this, received this and reviewed it, did you have any questions about the damages?
A. Yes.
Q. What were your questions?
A. Well, basically -- well, the lessor submitted his letter, and we had already defaulted the lease, so what was done there wasn't really anything that I could -- I mean, we defaulted and we were moving forward.
Q. Did you have any questions about the damages that the lessor identified on Page 2 of the letter?
A. No.
Q. Did you discuss this letter with anyone?
A. No.
Q. Not even your counsel?

A. I shared the letter.
Q. You didn't have any discussions?
A. No.
Q. Did you consider this to be a certified claim?
A. No, because -- no, because there's no case number or anything on here. I don't --
Q. So there had to be a case number for it to be a certified claim?
A. It should have been submitted to another branch of the government to be a certified claim.
Q. Did you ever have a claim submitted to you as the contracting officer before this?
A. No.
Q. So you didn't think that you were the person to whom the certified claim should be submitted?
A. No.
Q. That's correct, you didn't think you were?
A. Yes.
Q. And did you discuss your opinion that you were not the right person to receive a

certified claim?
A. That information was well documented on the solicitation provisions that states that if you have a claim or anything, it needs to go to OMB, another branch of the government.
The lease clearly defined what needed to happen or what steps needed to be taken if you had a claim.
Q. Well, I'll ask you to find the provision in the lease in a minute.
But did you respond to Mr. Drew?
A. No.
Q. So you just got this letter and did nothing with it?
A. I shared it with legal.
Q. And that's it?
A. Yes.
Q. Then you just put it in your file?
A. Yes.
Q. Why didn't you tell Mr. Drew that you thought that he sent his claim to the wrong place?
A. He has a copy of the lease. All of the information steps are well documented in the

lease. It's his responsibility to find out what he needs to do.

Q. So just as a matter of common courtesy you didn't think you owed him that?

A. No.

MS. SCHOR: We'll just take a five-minute break, please. And when we come back -- why don't you take the lease with you? When we come back, you can identify where in the lease you think the claim should be submitted.

(A short break was taken.)

BY MS. SCHOR:

Q. So do you want to identify to me the place that would require -- that identifies where --

A. I could not find it. I confused it with the protest steps.

Q. Did you happen to review the FAR when you received this certified claim to find out what your responsibilities might be?

A. No.

Q. Now are you aware of any OSHA complaints that were made about the building?

A. Yes.